UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SEAN MICHAEL VEAL,

                    Petitioner,                    Case No. 1:18-cv-250

v.                                           Honorable Janet T. Neff

GREGORY SKIPPER,

                    Respondent.

_____/

**REPORT AND RECOMMENDATION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Sean Michael Veal is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Michigan. Following a half-hour-long bench trial in the Wayne County Circuit Court, Petitioner was convicted of carjacking, Mich. Comp. Laws § 750.529a; unlawfully driving away an automobile (UDAA), Mich. Comp. Laws § 750.413; and possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b. On April 9, 2015, the court sentenced Petitioner to prison terms of 9 to 20 years for carjacking and 2 to 5 years for UDAA, both consecutive to a term of 2 years for felony-firearm.

        On March 8, 2018, Petitioner filed his habeas corpus petition which raises six grounds for relief, as follows:

      I.        Petitioner is entitled to a new trial where trial counsel, in four instances, failed to impeach the complaining witness.

      II.      Trial counsel was ineffective for failing to allocute on behalf of Petitioner at his sentencing hearing.

      III.    Reversible error occurred when the trial judge heard evidence that Petitioner was charged in a separate proceeding with an unrelated offense.

IV.     Petitioner was denied his right of allocution before the sentence was imposed.

V.      The sentence was improperly influenced by Petitioner's failure to admit guilt.

VI.     The trial court "retaliated" against Petitioner for refusing to enter a plea of guilty to an unrelated offense.

(Pet., ECF No. 1, PageID.8-15.)  Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are without merit or because habeas review is barred by Petitioner's procedural default in the state courts.   Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.      Factual allegations

Petitioner was charged in two separate criminal cases:  the carjacking case, Case No. 14-9290-01, and an unrelated armed robbery case, Case No. 14-9360-01.   Petitioner committed the armed robbery shortly after the carjacking.  The two cases worked their way through pretrial proceedings together.  (Arraignment Tr., ECF No. 9-3; 12/4/2014 Final Conference Tr., ECF No. 9-4; 12/11/2014 Final Conference Tr., ECF No. 9-5.)

Petitioner's counsel and the prosecutor discussed possible plea offers that involved both cases.  (*Id.*)  The prosecutor's last offer before the carjacking trial involved resolution of both cases with a plea of guilty to the carjacking charge.  (12/11/2014 Final Conference Tr., ECF No. 9-5, PageID.132.)  Petitioner rejected that offer; accordingly, the carjacking case was set for trial.

At the beginning of the trial, the prosecutor asked the court's leave to place the plea offer on the record.  (Trial Tr., ECF No. 9-6, PageID.139.)  The court acquiesced.  (*Id.*)  The

2

prosecutor prefaced her statement of the offer by saying: "The defendant has two cases, your Honor, from the same day." (*Id*.) Petitioner's counsel halted the statement of the offer. (*Id*.) The court immediately recognized that, as the trier of fact, it would not be appropriate to hear about other charges. (*Id*.) Nothing further was put on the record with regard to the offer or the existence or nature of any other charges.

Counsel did not make opening arguments. Instead, the prosecutor simply put on her sole witness. According to the testimony of Roderick Ford, on September 10, 2014, Ford was driving in the City of Detroit. (*Id*., PageID.141-160.) He dropped his cell phone. He stopped the car to pick it up. As he retrieved it, two men approached his window. Ford identified Petitioner as one of the men.

Both men had guns. Both men pointed their guns at Ford. Petitioner told Ford to get out of the vehicle. The other man opened Ford's door and ordered him out of the car. Ford raised his hands and exited the car. The other man hopped in. Petitioner went to the other side of the vehicle and pulled the passenger out. Petitioner hopped in. A third man jumped into the back seat and the three men drove away in Ford's car.

Three days later, Ford identified Petitioner in a photo lineup.

After Mr. Ford's fifteen minutes of testimony, the prosecution rested.

Petitioner testified. (*Id*., PageID.161-163.) He denied he was at the location of the carjacking that night. He said he was at his girlfriend's house.

After Petitioner's two-minute testimony, the defense rested. Counsel gave closing arguments, and the court rendered its decision, finding Petitioner guilty of carjacking, UDAA, and felony firearm, on the strength of Ford's testimony. The court dismissed an additional charge of receiving and concealing stolen property.

The sentencing transcript indicates that the parties expected to wrap up both cases at that hearing.  (Sentencing Tr., ECF No. 9-7.)   Both cases were called—the carjacking case for sentencing and the armed robbery case for a final conference.  (*Id*.)  The plea offer in the armed robbery case was put on the record: a guilty plea to armed robbery with a sentence of 4 to 15 years, to run concurrently with the sentence on the carjacking conviction.  (*Id*., PageID.176.)  The court had, apparently, already discussed the carjacking sentence with Petitioner and his counsel off the record.  Petitioner made multiple references to a sentence of nine years before the court had even begun the sentencing part of the hearing.  (*Id*., PageID.177.)  Petitioner was concerned that the nine years and the four years would not run concurrently.  (*Id*.)  The court assured Petitioner that the sentences would run concurrently.  (*Id*.)  The court then went forward with Petitioner's plea.

The court proceeded with the plea colloquy, up to the point where Petitioner was required to acknowledge his involvement in the armed robbery.  Then, Petitioner would not admit he was at the place where the crime occurred.  (*Id*., PageID.180.)  The court indicated that without such an admission, there could be no plea.  (*Id*.)  Petitioner then acknowledged he was there.  (*Id*.)

The court asked Petitioner what he had done that supported his guilty plea to armed robbery.  (*Id*.)  Petitioner indicated he had not done anything and that he was just taking the plea to avoid getting a higher sentence.  (*Id*.)  Thereafter, the court refused to take the plea and, instead, proceeded with the sentencing on the carjacking case.  (*Id*., PageID.181.)  Petitioner was sentenced as set forth above.  The court scheduled a trial on the armed robbery case.[1]  (*Id*., PageID.183.)

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences in the carjacking case.  In the brief Petitioner filed with the assistance of counsel, he

---

[1] The armed robbery case was ultimately resolved by plea and Petitioner received a sentence of 4 to 15 years.  *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=958147 (last visited Mar. 3, 2019).

raised habeas issues I and II.[2]  (Pet'r's Appeal Br., ECF No. 9-8, PageID.201.)  By *pro per* Standard

4 brief, Petitioner also raised his habeas issues III-VI in the Michigan Court of Appeals.  (Pet'r's

Std. 4 Br., ECF No. 9-8, PageID.248-261.)  By unpublished opinion issued on April 18, 2017, the

court of appeals rejected Petitioner's challenges and affirmed his convictions and sentences.

(Mich. Ct. App. Op., ECF No. 9-8, PageID.185-189.)

Petitioner then turned to the Michigan Supreme Court.  He filed an application for

leave to appeal raising the same six issues he raised in the court of appeals.  (Pet'r's Appl. for

Leave to Appeal, ECF No. 9-9, PageID.301-321.)  The Michigan Supreme Court denied leave by

order entered November 29, 2017.  (Mich. Order, ECF No. 9-9, PageID.300.)

This petition followed.

II.      AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'"

and ensures that state court convictions are given effect to the extent possible under the law.  *Bell*

*v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a

person who is incarcerated pursuant to a state conviction cannot be granted with respect to any

claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision

that was based upon an unreasonable determination of the facts in light of the evidence presented

---

[2] Petitioner also moved for remand to permit an evidentiary hearing regarding his counsel's alleged ineffective assistance.  (Pet'r's Mot. for Remand, ECF No. 9-8, PageID.216-218.)  The court of appeals denied the motion by order entered March 17, 2016.  (Mich. Ct. App. Order, ECF No. 9-8, PageID.239.)

in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Ineffective Assistance of Counsel at Trial

Petitioner contends that his trial counsel rendered ineffective assistance when counsel failed to impeach the victim with the victim's inconsistent preliminary examination testimony. Petitioner identifies four specific instances where Mr. Ford's testimony was inconsistent in the two proceedings:

1.    At the preliminary exam, Mr. Ford testified that Mr. Veal was the individual who came up to his door (driver's side) and ordered him out of the car and that it was Mr. Veal who was pointing a gun at his head. (PE 7-8) However, at trial, Mr. Ford testified that it was the person with Mr. Veal who did these things. (TT page 14, 16)

2.    Mr. Ford named specific types of guns the individuals had but gave different names at the prelim and at trial. (PE 7; TT 19-20)

3.    Mr. Ford's testimony changed regarding the length of time that elapsed between the incident and his identification of Mr. Veal in a photo array. (PE 10-11; TT 20).

4.    Most notably, at trial Mr. Ford testified there was a third person that participated in the carjacking (TT Page 18-19), however, Mr. Ford made no mention of a third person in his preliminary exam testimony. (PE 4-15)

(Pet., ECF No. 1, PageID.8-9.)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing

8

on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

In resolving Petitioner's ineffective assistance claims, the Michigan Court of Appeals applied a standard that was functionally identical to the *Strickland* standard. (Mich. Ct. App. Op., ECF No. 9-8, PageID.185.) Moreover, as set forth below with respect to each of Petitioner's contentions, the appellate court applied the standard reasonably.

### A.    Where Was the Gun Pointed

With regard to purported differences in Ford's testimony regarding the approach to the car and pointing the gun, the appellate court reasoned:

> Decisions regarding what evidence to present and how to question witnesses are generally matters of trial strategy, which this Court will not second-guess. *Horn*, 279 Mich App. at 39. Ford's testimony at trial was generally consistent with his preliminary examination testimony. At both proceedings, Ford testified that defendant approached the car with a gun, pointed the gun at him, and ordered him out of the car. Given the general consistency in Ford's testimony, as well as Ford's testimony that there was "[n]o doubt in [his] mind" that defendant was one of the perpetrators, defense counsel reasonably may have concluded that the impeachment would not have helped defendant's case to any significant degree. Furthermore, defendant has not shown a reasonable probability that, but for defense counsel's failure to impeach Ford with the prior testimony, the result of the proceeding would have been different. Ford consistently testified that defendant pointed a gun at him and ordered him out of the car. Therefore, we conclude that there is not a reasonable probability that, but for defense counsel's conduct, the result of the proceeding would have been different. See *Trakhtenberg*, 493 Mich at 51.

(*Id.*, PageID.186.) The court of appeals rejected Petitioner's argument on three levels.

First, the court concluded that Petitioner was wrong as a matter of fact with regard to the scope of the inconsistencies. Petitioner claimed multiple inconsistencies on this point, but by process of elimination, it is apparent that the court of appeals concluded the only inconsistency regarding the approach was whether Petitioner pointed his gun at Ford's head and Petitioner's partner pointed his gun at Ford's chest, or *vice versa*. The state court's factual determinations that

Petitioner's other claimed inconsistencies on this point did not exist is well-supported by the record.

Second, the court concluded that counsel's decision not to impeach Ford on whether Petitioner had pointed his gun at Ford's head or his chest was entirely reasonable.  Whether Petitioner threatened to shoot Ford in the head or the chest is immaterial to his guilt for the charged offenses.  The only possible benefit of this "impeachment" would be to cast doubt on Ford's testimony generally.  But, even accepting that the testimony is inconsistent, it would likely reflect more upon Ford's memory than his credibility.  Ford's preliminary examination testimony was offered a few weeks after the incident.  His trial testimony was offered six months after the fact.

Petitioner has failed to show that the court of appeals determination regarding the reasonableness of counsel's conduct is contrary to, or an unreasonable application of, clearly established federal law.  Even if counsel chose to forego a particular avenue of impeachment, it would not necessarily render counsel ineffective.  Counsel is not required to "develop  every bit of testimony through all available inconsistent statements."  *Poyner v. Iowa*, 990 F.2d 435, 438 (8th Cir. 1993); *see also United States v. Kozinski*, 16 F.3d 795, 817 (7th Cir. 1994).  "The idea that trial counsel may have been 'more effective[ ]' in his impeachment had he taken another course is precisely the sort of second-guessing of a tactical judgment that *Strickland* counsels against."  *Moss v. Olson*, 699 F. App'x 477, 487 (6th Cir. 2017) (citing *Esparza v. Sheldon*, 765 F.3d 615, 624 (6th Cir. 2014)); *see also Anderson v. Berghuis*, No. 1:10-cv-349, 2015 WL 566619, at *13 (W.D. Mich. Feb. 11, 2015) ("Pointing out each and every inconsistency in the witnesses' statements, particularly on points that were not material to the charged offenses, would have been an unnecessary annoyance and  burden on the court . . . .").

Third, the court of appeals concluded that Petitioner had suffered no prejudice by virtue of counsel's decision to forego this particular avenue of impeachment.  That conclusion is entitled to AEDPA deference.  *Moss*, 699 F. App'x at 487.  Petitioner can obtain relief only if the appellate court's decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond the possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.  Petitioner never addresses that standard.  He simply repeats the same unsuccessful arguments he made to the court of appeals.  Because the court of appeals conclusion is eminently reasonable, Petitioner is not entitled to habeas relief on this claim.

> **B.** **What Were the Makes or Calibers of the Guns**

The court of appeals rejected Petitioner's "failure to impeach" claim regarding the guns as well:

> Second, defendant argues that defense counsel should have impeached Ford with his preliminary examination testimony regarding the types of guns used during the carjacking.  Ford testified at trial that defendant's gun "seemed like a .380 or a Glock," and that the second man's gun "looked like a .357 revolver."  At the preliminary examination, Ford testified that the gun defendant was holding "looked like a Glock or a .9 millimeter," and that the second man's gun "[l]ooked like a .380."  While there was some inconsistency in Ford's testimony, the inconsistency was not significant.  The exact type of guns used by the perpetrators was not an important detail in the case.  Furthermore, Ford's testimony that the guns "looked like" a certain type of gun indicated that Ford was not certain regarding his identification of the guns.  This explains the minor discrepancy in his testimony.  Under these circumstances, defendant has not shown that defense counsel's failure to impeach Ford with the prior testimony amounted to ineffective assistance of counsel.

(Mich. Ct. App. Op., ECF No. 9-8, PageID.186.)  The court of appeals did not specify whether Petitioner's showing fell short because counsel's conduct was reasonable, because there was no impact on the outcome, or both.  Any of those possible determinations, however, would be well-supported on the record and consistent with, and reasonable applications of, *Strickland*, because

the facts at issue—the makes or calibers of the guns—were not material to Petitioner's guilt and

because any inconsistency did not meaningfully reflect upon Ford's credibility.

### C.    Timing of the Photo Identification of Petitioner

The court of appeals rejected Petitioner's claim regarding the timing of Ford's

photo identification of Petitioner:

> Third, defendant argues that defense counsel should have impeached Ford with his
> preliminary examination testimony regarding when he viewed the photographic
> lineup.  Ford testified at trial that he participated in a photo lineup three days after
> the carjacking.  At the preliminary examination, Ford testified that he viewed the
> photo lineup "[p]robably about a week after" the incident.  Again, defendant has
> not shown that defense counsel's failure to impeach Ford with this minor difference
> in his testimonies amounted to ineffective assistance of counsel.  Ford's preliminary
> examination testimony indicated that he was estimating the amount of time that
> passed between the incident and his viewing of the photo array.  We cannot
> conclude that defense counsel's failure to question Ford regarding the lineup
> constituted deficient performance or that there is a reasonable probability that had
> defense counsel questioned Ford regarding this minor inconsistency, the result of
> the proceeding would have been different.

(Mich. Ct. App. Op., ECF No. 9-8, PageID.186-187.)  Petitioner offers no reason for the Court to

disregard the deference owed to the appellate court's determination; instead, he simply repeats the

arguments the court of appeals rejected.  For the reasons set forth above, the state court's

determinations are factually and legally sound.

### D.    Third Perpetrator

Finally, the court of appeals rejected Petitioner's argument regarding the third

perpetrator:

> [D]efendant argues that defense counsel should have impeached Ford with his
> failure to mention a third perpetrator during his preliminary examination testimony.
> At trial, Ford testified that, before defendant and the second man drove off in the
> car, a third man appeared and jumped into the back seat of the car.  Ford did not
> mention a third person during his preliminary examination testimony.  At the
> preliminary examination, Ford was not questioned regarding the appearance of a
> third person, and he did not deny the existence of a third person, but merely offered
> no testimony regarding a third person.  The appearance of the third person was not
> an important fact, and there was no real inconsistency in the testimony because

12

Ford merely omitted any reference to the third person at the preliminary examination. Therefore, defense counsel's decision not to impeach Ford did not constitute deficient performance. Furthermore, defendant has not shown that there was a reasonable probability that the result of the proceeding would have been different had Ford been impeached on this basis. Accordingly, defendant has not shown that defense counsel's failure to impeach Ford with the lack of prior testimony regarding the third person amounted to ineffective assistance of counsel.

(Mich. Ct. App. Op., ECF No. 9-8, PageID.187.) Petitioner has failed to show that the court of appeals determination—that there was no inconsistency between Ford's preliminary examination and trial testimony on this point—was unreasonable. Accordingly, the court's further determinations that counsel's conduct was reasonable and that there was no prejudice are entirely consistent with, and reasonable applications of, *Strickland*.

IV.    Other Bad Acts

Petitioner next complains that the prosecutor's aborted attempt to put the latest plea offer on the record at the beginning of trial prejudiced him because it put before the trier-of-fact some evidence that Petitioner may have committed another "bad act." The court of appeals rejected the claim:

Defendant . . . argues . . . that he is entitled to a new trial because the trial judge, sitting as the trier of fact, was informed by the prosecutor that defendant had been charged with an unrelated offense that occurred on the same day as the offenses for which defendant was being tried. We disagree.

We review this unpreserved, nonconstitutional issue for plain error affecting defendant's substantial rights. *People v. Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). While the trial judge should not have been informed that defendant was charged with another offense that occurred on the same day as the instant offenses, we are not convinced that any error affected the outcome of the proceedings. Error that warrants reversal in a jury trial may not necessarily warrant reversal in a bench trial. See *People v. Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986). Furthermore, "[a] judge, unlike a juror, possesses an understanding of the law which allows him to ignore such errors and to decide a case based solely on the evidence properly admitted at trial." *People v. Taylor*, 245 Mich App 293, 305; 628 NW2d 55 (2001) (citation and quotation marks omitted). Given these principles and the brief nature of the prosecutor's comments, we cannot conclude that any error amounted to plain error that affected defendant's substantial rights. Furthermore, the trial judge clarified that the prosecution could not tell him that

13

information, and the prosecutor did not discuss the unrelated offense further. Therefore, we conclude that defendant fails to establish plain error affecting his substantial rights.  See *Carines*, 460 Mich at 763.

(Mich. Ct. App. Op., ECF No. 9-8, PageID.187-188.)  The appellate court made clear that it did not consider Petitioner's challenge as a constitutional challenge.  That determination is entirely consistent with clearly established federal law.

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle v. McGuire*, 502 U.S. 62 (1991), the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Id.* at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Therefore, Petitioner has not shown and cannot show that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law.

V.    Sentencing

Petitioner's remaining challenges focus not on his convictions, but on his sentences. He claims that he was denied the opportunity to allocute, that counsel was ineffective for failing to allocute, that the court punished Petitioner for his failure to admit guilt, and that the court punished him for failing to plead guilty to the armed robbery offense.

14

A.      **Right to Allocute**

The court of appeals acknowledged that Petitioner had a right to allocute under state law:

> MCR 6.425(E)(1)(c) provides that the sentencing court must, on the record, "give the defendant, the defendant's lawyer, the prosecutor, and the victim an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence."  "[T]his court rule means that the trial court must make it possible for a defendant who wishes to allocute to be able to do so before the sentence is imposed."  *People v. Petit*, 466 Mich 624, 628; 648 NW2d 193 (2002).

(Mich. Ct. App. Op., ECF No. 9-8, PageID.188.)  Moreover, the court of appeals concluded that Petitioner had been afforded that right.  (*Id*. ("Defendant had an opportunity to address the court at this time.").)  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

The state court rule defines the absolute boundary of Petitioner's right to allocution.  There is no constitutional right to allocution under the United States Constitution.  *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir. 1997) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)); *United States v. Vujovic*, 635 F. App'x 265, 272 (6th Cir. 2015); *Cooey v. Coyle*, 289 F.3d 882, 912 (6th Cir. 2002).  Therefore, a trial court's failure to afford a defendant the right to allocution is not a claim cognizable on habeas review.  *Scrivner v. Tansy*, 68 F.3d 1234, 1240 (10th Cir. 1995); *Harrelson v. Trippett*, No. 95-1199, 1995 WL 579571, at *9, n. 5 (6th Cir. Oct. 2, 1995).

### B.    Counsel's Failure to Allocute

Although Petitioner has no constitutional right to allocution, he is constitutionally entitled to effective assistance from counsel.  Petitioner's counsel did not allocute on Petitioner's behalf at the sentencing hearing.  To the extent counsel's inaction was professionally unreasonable and if Petitioner suffered prejudice as a result, Petitioner has raised a cognizable habeas claim.

The court of appeals concluded that counsel's decision to forego allocution at the hearing was neither professionally unreasonable nor prejudicial:

> "The decision to address the court at sentencing is a tactical one." *People v. Arney*, 138 Mich App 764, 766; 360 NW2d 291 (1984).  "A difference of opinion as to trial tactics does not amount to ineffective assistance of counsel." *Id*.  In this case, at the beginning of the sentencing hearing, the sentencing judge indicated that he intended to sentence defendant to nine years in prison, which was the very bottom of the 108 to 180 months recommended minimum sentence range.  Defense counsel reasonably may have believed that he could not have improved defendant's position through allocution.  This Court should not second-guess defense counsel's reasonable, strategic decision not to allocute on defendant's behalf.  See *People v. Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013).  Furthermore, defendant has not shown a reasonable probability that allocution would have resulted in a lower sentence.  Accordingly, defendant has not shown that he was denied the effective assistance of counsel.

(Mich. Ct. App. Op., ECF No. 9-8, PageID.187.)

Petitioner does not address the appellate court's factual determinations.  He simply repeats the arguments he raised in his court of appeals' brief.  Petitioner and his counsel knew, going into the sentencing hearing, that the trial court intended to sentence Petitioner to the lowest possible sentence within the recommended minimum sentence range: 9 years.  The court of appeals reasonably concluded that Petitioner could not demonstrate prejudice where the court sentenced him to the lowest possible minimum sentence.

Nonetheless, Petitioner contends that counsel should have raised certain mitigating factors on Petitioner's behalf: Petitioner was 17-years-old at the time of the offense; there were

16

one or two older co-defendants; Petitioner lacked a father for his entire life; and Petitioner had a renewed sense of purpose after his girlfriend became pregnant with twins.  (Pet'r's Appeal Br., ECF No. 9-8, PageID.212.)  Petitioner refers the Court to the presentence investigation report as support for these mitigating factors.  (*Id.*)  By way of that reference, Petitioner reveals that all of these factors were before the trial court when it imposed sentence thereby undercutting further any possible claim that Petitioner was prejudiced by counsel's failure to raise them.

Where counsel knew that the trial court intended to sentence Petitioner to the lowest possible minimum sentence—and where the court was made aware of all the relevant mitigating factors by the presentence investigation report—the court of appeals' determination that counsel acted reasonably in foregoing allocution is reasonable on the record and neither contrary to, nor an unreasonable application of, clearly established law.  The appellate court's additional conclusion that Petitioner suffered no prejudice from counsel's failure to allocute is also reasonable and entirely consistent with *Strickland*.  Therefore, Petitioner has failed to demonstrate an entitlement to habeas relief on this issue.

### C.    Improper Consideration of Petitioner's Refusal to Admit Guilt

During the sentencing/final conference hearing, as the trial court discussed with Petitioner the plea offer on the armed robbery case, Petitioner stated: "I just want you to know that I really did not do the case."  (Sentencing Tr., ECF No. 9-7, PageID.175.)  Context suggests that Petitioner was referring to the armed robbery case.  Whatever case he meant, Petitioner contends that the trial court impermissibly punished him for the statement, either because he refused to admit his guilt to the carjacking offense or because Petitioner refused to enter a plea of guilty to the armed robbery offense.

The Michigan Court of Appeals concluded that either claim was factually unsupportable.  The court of appeals recognized that the trial court had indicated that Petitioner

17

would get a minimum sentence of 9 years—the lowest possible minimum sentence—at the very beginning of the plea hearing.  (Mich. Ct. App. Op., ECF No. 9-8, PageIF.188-189.)  Before the court had heard Petitioner's statement that he "did not do the case," before Petitioner's plea to the armed robbery proved infeasible, the trial court picked the lowest possible sentence.  For Petitioner to suggest he paid an additional price for subsequent events where the court had already declared the minimum sentence, and it was the lowest possible minimum sentence, is patently frivolous. Petitioner has failed to show that the Michigan Court of Appeals' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated:   March 26, 2019                          /s/ Ellen S. Carmody
                                                 Ellen S. Carmody
                                                 United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).